IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MICHAEL SMITH and SANDRA ) CIVIL 15-00128 LEK-KJM
SMITH, )
 )
        Plaintiffs, )
 )
     vs. )
 )
LIBERTY MUTUAL FIRE INSURANCE )
COMPANY, )
 )
        Defendant. )
_____ )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' COUNTER-MOTION FOR SUMMARY JUDGMENT**

On November 21, 2016, Defendant Liberty Mutual Fire

Insurance Company ("Defendant" or "Liberty Mutual") filed its

Motion for Summary Judgment ("Motion"). [Dkt. no. 41.] On

February 24, 2017, Plaintiffs Michael Smith and Sandra Smith

(collectively "Plaintiffs") filed their joint memorandum in

opposition to the Motion and Counter-Motion for Summary Judgment

("Counter-Motion"). [Dkt. no. 47.] Defendant filed its joint

reply in support of the Motion and memorandum in opposition to

Plaintiffs' Counter-Motion ("Reply") on March 3, 2017. [Dkt. no.

51.] The Motion and the Counter-Motion (collectively "Motions")

came on for hearing on March 13, 2017.

On April 27, 2017, this Court issued an entering order

ruling on the Motions ("4/27/17 EO Ruling"). [Dkt. no. 55.] The

instant Order supersedes the 4/27/17 EO Ruling. After careful

consideration of the Motions, supporting and opposing memoranda,

the arguments of counsel, and the relevant legal authority,
Defendant's Motion is HEREBY GRANTED, and Plaintiffs' Counter-
Motion is HEREBY DENIED, for the reasons set forth below.

## BACKGROUND

On March 17, 2015, Plaintiffs filed their original
Complaint in the State of Hawai`i Circuit Court of the First
Circuit against Liberty Mutual Group, Inc., doing business as
Liberty Mutual Insurance ("Liberty Mutual Group").  [Notice of
Removal, filed 4/15/15 (dkt. no. 1), Exh. A (Complaint).]
Liberty Mutual Group's Notice of Removal stated that Liberty
Mutual was the entity that issued the policy at issue in this
case.  [Notice of Removal at ¶ 2.]  Liberty Mutual Group asserted
that there was removal jurisdiction based on diversity because:
Liberty Mutual Group was, at all relevant times, a Massachusetts
corporation with its principal place of business in
Massachusetts; Liberty Mutual was, at all relevant times, a
Wisconsin corporation with its principal place of business in
Massachusetts; Plaintiffs were, at all relevant times, citizens
of the State of Hawai`i; and the amount in controversy exceeded
$75,000.  [Notice of Removal at ¶¶ 1-3, 6.]  Plaintiffs did not
challenge the removal.

## I.   Preliminary Issues

Plaintiffs filed their First Amended Complaint on
April 21, 2015, and their Second Amended Complaint on April 30,

2

2015.[1]  [Dkt. nos. 7, 9.]  Fed. R. Civ. P. 15(a) states, in

pertinent part:

> (1)  Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:
>
>> (A)  21 days after serving it, or
>>
>> (B)  if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2)  Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. . . .

At the time Plaintiffs filed their First Amended Complaint,

Liberty Mutual had not filed an answer.  Thus, the filing of the

First Amended Complaint was permissible under Rule 15(a)(1)(B).

Pursuant to Rule 15(a)(2), Plaintiffs had to obtain either a

stipulation or leave of court to file the Second Amended

Complaint, but failed to do.  However, because Liberty Mutual did

not object to the filing of the Second Amended Complaint and

filed its answer on May 18, 2015, [dkt. no. 11,] this Court

CONCLUDES that the failure to comply with Rule 15(a)(2) was

harmless.

---

[1] The First Amended Complaint and the Second Amended Complaint named both Liberty Mutual and Liberty Mutual Group as defendants.  On July 20, 2016, this Court approved the parties' stipulation to dismiss all Plaintiffs' claims against Liberty Mutual Group with prejudice.  [Dkt. no. 31.]

The stipulation that this Court approved on July 20, 2016 also allowed Plaintiffs to amend the Second Amended Complaint. [Dkt. no. 31.] Plaintiffs filed their Third Amended Complaint on September 15, 2016. [Dkt. no. 33.] Liberty Mutual, however, did not file an answer to the Third Amended Complaint. Fed. R. Civ. P. 8(b)(6) states, in pertinent part, "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." This rule, however, is limited to the factual allegations in the pleading. See, e.g., BMW of N. Am., LLC v. Mini Coupe Hawaii, LLC, Civil No. 12-00331 JMS-KSC, 2013 WL 840211, at *1 (D. Hawai`i Feb. 13, 2013) ("A defendant in default admits the factual allegations in the complaint." (citing Fed. R. Civ. P. 8(b)(6))), report and recommendation adopted, 2013 WL 838674 (Mar. 5, 2013). This Court therefore DEEMS the factual allegations of the Third Amended Complaint to be admitted.[2]

---

[2] Even if this Court did not deem the factual allegations of the Third Amended Complaint to be admitted because of Liberty Mutual's failure to file an answer, the factual allegations discussed in this Order are also included in Plaintiffs' Second Amended Complaint, and Liberty Mutual admitted many of those allegations. [Second Amended Complaint at ¶¶ 6, 8-10; Answer to Second Amended Complaint, filed 5/18/15 (dkt. no. 11), at ¶ 4 (admitting Plaintiffs' allegations in, inter alia, paragraphs 8-10).] Thus, Liberty Mutual's failure to file an answer to the Third Amended Complaint is not a controlling factor in this Court's analysis of the Motions.

The instant case arises from an automobile insurance policy that Plaintiffs purchased from Liberty Mutual.  At the outset, Plaintiffs argue that the policy application furnished by Liberty Mutual during discovery is inadmissible, pursuant to Haw. Rev. Stat. § 431:10-208, because Liberty Mutual allegedly failed to furnish the complete application.  Liberty Mutual argues that § 431:10-208(c) is the only provision that is arguably applicable to this case, and it only renders applications "signed by the insurer" inadmissible when the insurer fails to provide a copy of the application to the insured upon request.[3]  Liberty Mutual asserts that: the policy application it has presented in connection with the Motions was not "signed by the insurer"; and, even if the application was "signed by the insurer," there is no evidence that Plaintiffs made a written demand for a copy of the application.  This Court agrees with Liberty Mutual and CONCLUDES that Plaintiffs' policy application is admissible for purposes of the instant Motions.

---

[3] Haw. Rev. Stat. § 431:10-208(c) provides:

> No application for insurance signed by the insurer shall be admissible in evidence in any action between the insured and the insurer arising out of the policy applied for, if the insurer fails to furnish the insured a copy of the application, reproduced by any legible means, within thirty days after receipt by the insurer of insured's written demand for a copy.  This subsection also applies in instances when the application is signed on behalf of the insured and the reproduction request is made on behalf of the insured. . . .

## II.  __Factual Background Relevant to the Motions__

In connection with the policy application, Plaintiffs executed a form entitled "Hawaii Automobile Insurance Coverage Selection Form" ("Coverage Selection Form"). [Def.'s Separate Concise Statement in Supp. of Motion, ("Def.'s CSOF"), filed 11/21/16 (dkt. no. 42), Decl. of Kip M. Okinaka ("Okinaka Decl."), Exh. 2.] The completed form indicated Plaintiffs' selection of bodily injury ("BI") liability limits of $100,000 per person/$300,000 per accident and uninsured motorists ("UM") and underinsured motorists ("UIM") coverage equal to the BI liability limits. [Id. at LMIC 000018, LMIC 000020.] Liberty Mutual issued Policy No. AO2-268-406255-10, effective on August 2, 2005, to Plaintiffs with the coverages and limits that they chose on the Coverage Selection Form ("Policy"). [Def.'s CSOF at ¶ 7; Pltfs.' Separate Concise Statement in Supp. of Counter-Motion, ("Pltfs.' CSOF"), filed 2/24/17 (dkt. no. 48), at pg. 4 (admitting Def.'s ¶ 7); Def.'s CSOF, Decl. of Terry Weyant-Day ("Weyant-Day Decl."), Exh. 5 (Policy declarations, forms, and endorsements) at LMIC 000447-50.]

On February 4, 2011, Plaintiff Michael Smith was injured in a motor vehicle accident, and he incurred medical expenses that exceeded the Haw. Rev. Stat. § 431:10C-306 medical rehabilitative limit. [Third Amended Complaint at ¶ 5.] Plaintiff Sandra Smith also had derivative claims for emotional

6

distress and loss of consortium.[4]  [Id.]  Plaintiffs subsequently
reached a settlement with the adverse driver's insurer for the
driver's BI policy limit.  [Id.]

On April 10, 2014, Plaintiffs made a demand under the
Policy for $300,000 in UIM benefits, which represented $100,000
per claim, stacked, for their three insured vehicles.  [Id. at
¶ 7.]  Liberty Mutual rejected Plaintiffs' demand on the ground
that Plaintiffs' UIM limits were non-stacked, based on Plaintiff
Sandra Smith's prior written rejection of the UIM stacking option
when Plaintiffs initially purchased the Policy in 2005.  [Id. at
¶ 8.]  Liberty Mutual therefore offered Plaintiffs $100,000 as
the maximum available UIM coverage under the Policy.  [Id.]
Plaintiffs and Liberty Mutual agreed that Plaintiffs' acceptance
of the offer would not constitute a release of their claim that
the Policy included stacked UIM coverage.  [Id. at ¶ 9.]
Plaintiffs filed this declaratory judgment action seeking a
determination that an additional $200,000 in coverage is
available for the February 4, 2011 accident.  [Id.]

Plaintiffs argue in their Complaint that: 1) Liberty
Mutual failed to make, in writing, a legally sufficient offer of
the stacking option for UIM coverage; 2) because of lack of a

---

[4] Plaintiff Sandra Smith's claim is derivative of Plaintiff
Michael Smith's claim, and does not trigger a separate "per
person" limit under the Policy.  See First Ins. Co. of Hawai`i v.
Lawrence, 77 Hawai`i 2, 4, 881 P.2d 489, 491 (1994).

legally sufficient offer, any rejection of stacked UIM coverage by Plaintiffs was not valid because it was mistaken and unintentional; and 3) even assuming that Plaintiffs rejected stacked UIM coverage in 2005, they made material changes to the Policy since 2005 which required Liberty Mutual to re-offer the stacking option, but Liberty Mutual failed to do so. [<u>Id.</u> at ¶¶ 10-11.] Plaintiffs pray for the following relief: a declaratory judgment that, at the time of the February 4, 2011 accident, they were entitled to stacked UIM coverage of up to $300,000 per accident; attorneys' fees and costs pursuant to Haw. Rev. Stat. § 431:10-242; and any other appropriate relief. [<u>Id.</u> at pg. 5.]

In the Motion, Liberty Mutual asserts that it is entitled to summary judgment on three grounds: 1) it made a legally sufficient offer of stacked UIM coverage when Plaintiffs first obtained the Policy; 2) Plaintiffs rejected that offer in writing; and 3) none of the changes made to the Policy between its issuance and the February 4, 2011 accident required Liberty Mutual to make a new offer of stacked UIM coverage. Liberty Mutual therefore argues that it is entitled to judgment as a matter of law that only $100,000 in UIM coverage was available to Plaintiffs under the Policy, which Plaintiffs have already received in full.

In the Counter-Motion, Plaintiffs seek summary judgment on three grounds: 1) Liberty Mutual failed to make a legally sufficient offer to Plaintiffs of the stacking option for UIM coverage; 2) Plaintiffs never made a legally sufficient rejection of the stacking option for UIM coverage; and 3) Liberty Mutual failed to re-offer the UIM stacking option when Plaintiffs made material changes to the Policy.  Plaintiffs submit that, if they prevail on any one of these three issues, they are entitled to judgment as a matter of law that the Policy afforded them a stacked UIM coverage limit of $300,000, $200,000 of which Plaintiffs have not yet received.

## DISCUSSION

### I.    General Principles of Hawai`i Insurance Law

Because federal jurisdiction in this case is based on diversity, Hawai`i substantive law applies to the issues in this case.  See, e.g., State Farm Fire & Cas. Co. v. Cabalis, 80 F. Supp. 3d 1116, 1121 (D. Hawai`i 2015).

> A federal court interpreting state law is bound by the decisions of a state's highest court.  To the extent this case raises issues of first impression under Hawaii law, the Court, "sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide [the] issue."  Burlington [Ins. Co. v. Oceanic Design & Constr., Inc.], 383 F.3d [940,] 944 [(9th Cir. 2004)] (alterations in original) (internal quotations omitted).

Allstate Ins. Co. v. Riihimaki, Civ. No. 11-00529 ACK-BMK, 2012

WL 1983321, at *6 (D. Hawai`i May 30, 2012) (some alterations in

Riihimaki) (some citations omitted).

This district court has summarized the framework for

analyzing issues of insurance coverage under Hawai`i law as

follows:

> "Every insurance contract shall be construed
> according to the entirety of its terms and
> conditions as set forth in the policy, and as
> amplified, extended, restricted, or modified by
> any rider, endorsement or application attached
> to and made a part of the policy." Haw. Rev. Stat.
> § 431:10-237. Thus, Hawaii law looks to the plain
> language of the insurance policy to determine the
> scope of an insurer's duties. See, e.g., Sentinel
> Ins. Co. v. First Ins. Co. of Haw., 76 Hawai`i
> 277, 875 P.2d 894, 904 (1994); see also Hawaiian
> Ins. & Guar. Co. v. Fin. Sec. Ins. Co., 72 Haw.
> 80, 807 P.2d 1256, 1260 (1991) ("In the context of
> insurance coverage disputes, we must look to the
> language of the insurance policies themselves to
> ascertain whether coverage exists, consistent with
> the insurer and insured's intent and
> expectations."); Burlington Ins. Co. v. Oceanic
> Design & Constr., Inc., 383 F.3d 940, 945 (9th
> Cir. 2004) ("In Hawaii, the terms of an insurance
> policy are to be interpreted according to their
> plain, ordinary, and accepted sense in common
> speech.").
>
> Nevertheless, insurance policies must be
> construed "in accordance with the reasonable
> expectations of a layperson." Hawaiian Isle
> Adventures, Inc. v. N. Am. Capacity Ins. Co., 623
> F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing
> Dawes v. First Ins. Co. of Haw., 77 Hawai`i 117,
> 883 P.2d 38, 42 (1994)). Insurance contracts are
> "contracts of adhesion" and Hawaii law "ha[s] long
> subscribed to the principle that [they] must be
> construed liberally in favor of the insured and
> any ambiguities must be resolved against the
> insurer." Guajardo v. AIG Haw. Ins. Co., 118
> Hawai`i 196, 187 P.3d 580, 586 (2008) (citing
> Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i

398, 992 P.2d 93, 106–07 (2000) (internal
citations, quotation marks, brackets, and ellipses
omitted)); <u>see also</u> <u>Hart v. Ticor Title Ins. Co.</u>,
126 Hawai`i 448, 272 P.3d 1215, 1223 (2012).

<u>Cabalis</u>, 80 F. Supp. 3d at 1122 (alterations in <u>Cabalis</u>).

## II. **<u>Policy Application Date</u>**

        Plaintiffs dispute Liberty Mutual's assertion that

Plaintiffs applied for the Policy on or about July 16, 2005,

claiming that it is unclear why there are two application dates –

June 28, 2005 and July 25, 2005.  To show that there is a genuine

issue of fact as to when they applied for the Policy at issue,

Plaintiffs submit: an unsigned application dated July 25, 2005

and a signed application dated June 28, 2005; [Pltfs.' CSOF,

Decl. of Rodger I. Hoffman ("Hoffman Decl."), Exhs. 1-2;] an

unsigned four-page Coverage Selection Form, and the Buyer's Guide

that accompanied the form; [<u>id.</u>, Exh. 3;] and pages three and

four of the Coverage Selection Form, signed by Plaintiffs on

July 16, 2005, [<u>id.</u>, Exh. 4].

        Mr. Okinaka, the Liberty Mutual Sales Representative

who handled the transaction with Plaintiffs in 2005, states that:

> I have reviewed documents produced in this case
> Bates stamped LMIC 000014 - LMIC 000023.  Although
> I do not have a present recollection of this
> transaction, which occurred more than 11 years
> ago, to the best of my knowledge the documents
> indicate that there was only one application sent
> to and returned by [Plaintiffs] before being
> forwarded to Liberty Mutual's Underwriting
> Department.  It appears that initially, the first
> page of the application bore a date of June 28,
> 2005 (LMIC 000017), but since [Liberty Mutual] did

> not receive it back from [Plaintiffs] until
> approximately July 25, 2005, the application was
> submitted to Underwriting with a new first page
> showing the then current date, which is reflected
> in LMIC 000014.  The named insureds, vehicles and
> coverages are identical on both first pages.  In
> my experience, this is consistent with Liberty
> Mutual's standard operating procedures at the
> time.

[Def.'s Separate Concise Statement in Opp. to Counter-Motion,

("Def.'s Responsive CSOF"), filed 3/3/17 (dkt. no. 52), Decl. of

Kip M. Okinaka ("Responsive Okinaka Decl.")[5] at ¶ 4.]

Even viewing the record in the light most favorable to

Plaintiffs,[6] the available evidence establishes that there was

only one application, dated June 28, 2005, and Plaintiffs

executed the application on July 16, 2005.  Upon receipt of the

application form from Plaintiffs on July 25, 2005, the

application date was changed to reflect the then current date of

July 25, 2005.  The record also establishes that, despite the

blank Coverage Selection Form in the record, [Hoffman Decl.,

---

[5] Mr. Okinaka reviewed his responsive declaration, however,
he was unavailable to sign and return it to counsel at the time
of filing.  [Def.'s Responsive CSOF at pg. 3 n.1.]  Liberty
Mutual filed the signed declaration on March 7, 2017.  [Dkt.
no. 53.]

[6] This district court has stated that, in considering a
motion for summary judgment, "[a]ll evidence and inferences must
be construed in the light most favorable to the nonmoving party."
Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, Civil No. 12-00486
SOM-BMK, 2015 WL 1442961, at *4 (D. Hawai`i Mar. 27, 2015)
(citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
809 F.2d 626, 631 (9th Cir. 1987)).

Exh. 3 at LMIC 000018-21,] Plaintiffs executed a Coverage

Selection Form on July 16, 2005 [id., Exh. 4].[7]

     This Court FINDS that there are no genuine issues of

material fact as to the date that Plaintiffs' applied for the

Policy – July 16, 2005.

### III. **Offer of Stacked UIM Coverage**

     This district court has stated:

> HRS Section 431:10C-301(d) requires an insurer to
> offer the insured the opportunity to purchase UM
> and UIM coverage by offering the option to: (1)
> "stack uninsured motorist coverage and
> underinsured motorist coverage"; and (2) "select
> uninsured motorist coverage and underinsured
> motorist coverage, whichever is applicable, up to
> but not greater than the bodily injury liability
> coverage limits in the insured's policy." The
> offer of UIM or UM coverage must also meet certain
> conditions. The offer must:
>
> > (A) Be conspicuously displayed so as to
> > be readily noticeable by the insured;
> >
> > (B) Set forth the premium for the coverage
> > adjacent to the offer in a manner that the
> > premium is clearly identifiable with the
> > offer and may be easily subtracted from the
> > total premium to determine the premium
> > payment due in the event the insured elects
> > not to purchase the option; and
> >
> > (C) Provide for written rejection of the
> > coverage by requiring the insured to affix

---

[7] The Coverage Selection Form does not affect the
determination of whether a genuine issue of material fact exists
as to the Plaintiffs' application date. This issue does,
however, have a bearing on whether Liberty Mutual obtained a
valid written rejection of the stacked UIM coverage option, which
is discussed *infra* Section IV.

> the insured's signature in a location
> adjacent to or directly below the offer.
>
> HRS § 431:10C-301(b)(4).
>
> Section 431:10C-301(d) further provides that
> offers "are to be made when a motor vehicle
> insurance policy is first applied for or
> issued. . . .  Once an insured has been provided
> the opportunity to purchase or reject the
> coverages in writing under the options, no further
> offer is required to be included with any renewal
> or replacement policy issued to the insured."
> When a material change is made to an existing
> policy, however, the resulting policy is not a
> "renewal or replacement policy"; thus, a new offer
> of optional UM/UIM coverage is required.  Allstate
> Ins. Co. v. Kaneshiro, 93 Haw. 210, 217, 998 P.2d
> 490, 497 (2000). . . .

Ford v. State Farm Mut. Auto. Ins. Co., Civil No. 16-00220

JMS-KJM, 2016 WL 6275181, at *5 (D. Hawai`i Aug. 31, 2016) (some

alterations in Ford), *report and recommendation adopted*, 2016 WL

5339348 (Sept. 22, 2016).

Liberty Mutual argues that it made a legally sufficient

offer of stacking UIM coverage under Hawai`i law, while

Plaintiffs argue that Liberty Mutual failed to do so.  "Mollena

[v. Fireman's Fund Insurance Co. of Hawaii, 72 Haw. 314, 816 P.2d

968 (1991),] provides this Court with guidance on determining the

legal sufficiency of a required offer of UIM coverage."  Ford,

2016 WL 6275181, at *6.

> Under Mollena's four part test, an offer is
> legally sufficient when all of the following are
> met:
>
> > (1) if made other than face-to-face, the
> > notification process must be commercially

14

> reasonable; (2) the limits of the optional
> coverage must be specified and not merely
> offered in general terms; (3) the insurer
> must intelligibly advise the insured of the
> nature of the optional coverage; and (4) the
> insurer must apprise the insured that the
> optional coverage is available for a
> relatively modest increase in premium.

Mollena, 72 Haw. at 320, 816 P.2d at 971
(citations omitted).

Macabio v. TIG Ins. Co., 87 Hawai`i 307, 314, 955 P.2d 100, 107

(1998) (citations omitted).  Furthermore, the Hawai`i Supreme

Court explained that "the insurer has the burden of proving a

legally sufficient offer was made.  If the insurer cannot show

that the four-part test has been met, then coverage is implied as

a matter of law."  Mollena, 72 Haw. at 320, 816 P.2d at 971

(citations omitted).

     A.     **Notification Process**

          Liberty Mutual submits as an undisputed material fact

that Plaintiffs "also signed an acknowledgment that they had been

provided an explanation and offer for UIM coverage and stacking."

[Def.'s CSOF at ¶ 4 (citing Okinaka Decl., Exh. 2 (Coverage

Selection Form) at LMIC 000021).]  In response, Plaintiffs

dispute this fact, in part, and submit that they "did not receive

a copy of Liberty Mutual's 'Hawaii Automobile Insurance Buyer's

Guide' (LMIC 000028 - LMIC 000031) as part of the insurance

15

application/purchase process with Liberty Mutual."[8]  [Pltfs.'
CSOF at pg. 3; id., Aff. of Michael Smith at ¶ 9; id., Aff. of
Sandra Smith at ¶ 4.]  The Buyer's Guide provides "[b]rief
descriptions of the coverages" referenced in the Coverage
Selection Form.[9]  [Okinaka Decl., Exh. 2 at LMIC 000018.]  If
Plaintiffs' did not receive the Buyer's Guide, the notification
process of the offer may not be commercially reasonable.  This
assumes, however, that the Buyer's Guide was the only way that
Liberty Mutual transmitted the offer of UIM coverage to
Plaintiffs.  The offer could have been transmitted via the
application form, or the Coverage Selection Form that is sent
with the Buyer's Guide.  For purposes of Liberty Mutual's Motion,
this Court must view the record in the light most favorable to
Plaintiffs,[10] and will therefore assume that the Buyer's Guide

---

[8] In some instances, however, Plaintiffs state that they "do
not recall receiving/reviewing" the Buyer's Guide.  See, e.g.,
Pltfs.' CSOF at pg. 3.

[9] The Coverage Selection Form also states: "It is important
that you refer to the Hawaii Automobile Insurance Buyer's Guide,
and your current policy declaration showing the coverage you
have, as you make your coverage selections."  [Okinaka Decl.,
Exh. 2 at LMIC 000018 (emphasis in original)).]

[10] This district court has stated that, in considering a
motion for summary judgment, "[a]ll evidence and inferences must
be construed in the light most favorable to the nonmoving party."
Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, Civil No. 12-00486
SOM-BMK, 2015 WL 1442961, at *4 (D. Hawai`i Mar. 27, 2015)
(citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
809 F.2d 626, 631 (9th Cir. 1987)).

was the only way that Liberty Mutual transmitted the offer to
Plaintiffs.

This Court does not adopt Plaintiffs' version of the
facts regarding the receipt of the Buyer's Guide because
Plaintiffs' story is blatantly contradicted by the record, and no
reasonable jury could believe it.  See Scott v. Harris, 550 U.S.
372, 380 (2007) ("When opposing parties tell two different
stories, one of which is blatantly contradicted by the record, so
that no reasonable jury could believe it, a court should not
adopt that version of the facts for purposes of ruling on a
motion for summary judgment.").  First, Plaintiffs expressly
acknowledged, in writing on the Coverage Selection Form, that
they were provided explanations and offers for, inter alia, UIM
coverage and non-stacked and stacked limits.  [Okinaka Decl.,
Exh. 2 at LMIC 000022.]  Plaintiffs each admit that they
"recognize [their] signatures on LMIC 000022," page four of the
Coverage Selection Form.  [Pltfs.' CSOF, Aff. of Michael Smith at
¶ 8; id., Aff. of Sandra Smith at ¶ 3.]  This, read in
conjunction with the fact that Plaintiffs only disputed "in part"
Liberty Mutual's undisputed material fact number four, is
evidence that Plaintiffs signed the acknowledgment.  [Pltfs.'
CSOF at pg. 3.]

Furthermore, Mr. Okinaka states that Liberty Mutual
"provided [the Buyer's Guide] to all applicants for automobile

17

insurance from Liberty Mutual during the period in which
[Plaintiffs] purchased their policy." [Okinaka Decl. at ¶ 6.]
Mr. Okinaka also states that:

> Although I do not have present recollection of
> this particular transaction, it was my practice in
> 2005 to send the Hawaii Automobile Insurance
> Buyer's Guide, LMIC 000028 - LMIC 000031 to the
> insured together with the application and coverage
> selection forms, whether by mail, fax or email. I
> have no reason to believe I would have deviated
> from this procedure with this application.

[Responsive Okinaka Decl. at ¶ 5.] "[T]he Buyers (sic) Guide
contained no signature line itself," therefore Liberty Mutual
"did not ask applicants to sign or return this document to
[Liberty Mutual's] office." [Okinaka Decl. at ¶ 6.]

        For the reasons set forth above, the Court FINDS that
no genuine issue of material fact exists, and CONCLUDES that
Liberty Mutual's notification process of the offer of stacked UIM
coverage was commercially reasonable.

        **B.    Specificity of the Limits of the Optional UIM Coverage**

        Plaintiffs argue that the Coverage Selection Form:
1) did not clearly indicate to Plaintiffs that they were
purchasing $100,000 per person/$300,000 per accident of BI
coverage, and 2) did not clearly indicate the amount Plaintiffs
would pay for stacked UIM coverage for the three vehicles insured
under the Policy, which would have limits of $300,000 per
person/$900,000 per accident. Liberty Mutual, on the other hand,
argues that the first page of the Coverage Selection Form clearly

18

and unambiguously indicates the selection of BI limits of
$100,000 per person/$300,000 per accident.  Liberty Mutual adds
that the Coverage Selection Form specifies the premium for
stacked coverage of $100,000 per person/$300,000 per accident for
each vehicle, and, based on the explanation of stacking in the
Buyer's Guide, it would be a simple matter for the insured to add
the limits and premiums to arrive at the total premium and the
available limits for stacked coverages.

Reasonable minds could not differ as to whether Liberty
Mutual specified the limits of the optional UIM coverage.  The
Coverage Selection Form clearly indicates Plaintiffs' selection
for BI liability limits of $100,000 per person/$300,000 per
accident, and UIM coverage equal to the BI limits.  [Okinaka
Decl., Exh. 2 at LMIC 000018, LMIC 000020.]  Although Plaintiffs
argue that the Coverage Selection Form does not clearly indicate
the amount Plaintiffs would pay for stacked UIM coverage totaling
$300,000/$900,000, the Hawai`i Supreme Court does not require the
selection form to separately specify the total premium with
stacking for each conceivable combination of limits to satisfy
the second prong of the <u>Mollena</u> test.  <u>See</u> <u>Macabio</u>, 87 Hawai`i at
315, 955 P.2d at 108.

In <u>Macabio</u>, the Hawai`i Supreme Court noted that "there
are four columns in the chart separating stacked and unstacked
UIM benefits from stacked and unstacked UM benefits."  <u>Id.</u>  In

19

Ranger v. State Farm Insurance Cos., 333 F. Supp. 2d 935, 939 (D. Hawai`i 2004), this district court reasoned that, because "[s]eparate columns specify the prices of the non-stacked and stacked options for both the UM and UIM coverage[,]" the offer satisfied prong two of the Mollena test.  Section 4b of the Coverage Selection Form, which pertains only to UIM coverage, clearly specifies the available coverage limits along with their respective premiums, with and without stacking, in separate columns.  [Okinaka Decl., Exh. 2 at LMIC 000020.]

This Court FINDS that there is no genuine issue of material fact, and CONCLUDES that Liberty Mutual specified the limits of the optional UIM coverage available to Plaintiffs when they initially purchased the Policy.

C.    **Intelligible Advice of the
Nature of the UIM Stacked Coverage**

Liberty Mutual argues that it intelligibly advised Plaintiffs of the nature of the optional UIM stacked coverage in its Buyer's Guide, by including a straightforward, comprehensive, and accurate explanation of UIM coverage and the benefits of stacking, complete with examples.  Plaintiffs argue that they did not receive the Buyer's Guide, and thus were not fully informed of their loss of rights and the ability to protect themselves through the purchase of the stacking option pertaining to UIM coverage.  Plaintiffs' argument assumes that the Buyer's Guide was the only way that Liberty Mutual could have intelligibly

20

advised Plaintiffs about the nature of the available UIM stacked coverage and, for purposes of Liberty Mutual's Motion, this Court will accept Plaintiffs' assumption.

This Court has found that Plaintiffs received the Buyer's Guide.  Turning to the contents of the Buyer's Guide, "[i]n Mollena, th[e Hawai`i Supreme C]ourt held that the offer of [UIM] and [UM] motorists benefits failed the third prong of the test because 'the policyholder message lacked any definition or **examples or description** of the **nature** of [UIM] coverage.'" Macabio, 87 Hawai`i at 315, 955 P.2d at 108 (emphases in Macabio) (quoting Mollena, 72 Haw. at 322, 816 P.2d at 972).  Here, the Buyer's Guide provides a definition of UIM stacked coverage and a description, along with an example, of the nature of the UIM stacked coverage.  [Okinaka Decl., Exh. 3 at LMIC 000030.]  The example conveys the nature of stacked versus non-stacked coverage by juxtaposing the non-stacked and stacked coverage amounts available for a single accident: it states, for a policy insuring two vehicles, the stacked option would provide double the amount of coverage for a single accident.  [Id.]  Read in conjunction with the description of UIM benefits, the example sufficiently describes the nature of UIM stacked coverage.

This Court FINDS that there is no genuine issue of material fact, and CONCLUDES that Liberty Mutual intelligibly

advised Plaintiffs of the nature of the optional UIM stacked
coverage available to them when they purchased the Policy.

**D.   Availability of the Optional Stacked UIM Coverage
for a Relatively Modest Increase in Premium**

Plaintiffs argue that the Policy application and
Coverage Selection Form failed to inform them that the optional
coverage was available for a relatively modest increase in
premium.  Liberty Mutual argues that the Buyer's Guide states
that stacking may be available for only a "modest increase in
[the insured's] premium", and also that "[i]n some limited
situations, [s]tacked UM and UIM coverage may cost less than Non-
Stacked UM and UIM coverage."  [Okinaka Decl., Exh. 3 at LMIC
000030 (emphases omitted).]

The Coverage Selection Form advises insureds that they
should refer to the Buyer's Guide and the current policy
declarations when selecting their coverage choices.  [Id., Exh. 2
at LMIC 000018.]  No reasonable minds could differ as to the
express language in the Buyer's Guide stating that the optional
UIM Coverage is available for a relatively modest increase in
premium.

This Court FINDS that there is no genuine issue of
material fact, and CONCLUDES that Liberty Mutual informed
Plaintiffs that the optional UIM coverage was available for a
relatively modest increase in premium.

22

Because no reasonable minds could differ as to Liberty
Mutual's satisfaction of the four requirements of the <u>Mollena</u>
test, this Court CONCLUDES that Liberty Mutual made a legally
sufficient offer for stacked UIM coverage to Plaintiffs.

**IV.  <u>Rejection of the Stacking Option for UIM Coverage</u>**

Liberty Mutual argues that Plaintiffs rejected the
stacked UIM coverage offer in writing, while Plaintiffs argue
that Liberty Mutual failed to obtain a legally sufficient
rejection of the stacking option from Plaintiffs as required by
Hawai`i law.  Plaintiffs emphasize that the unexecuted Coverage
Selection Form does not reject the stacking of UM/UIM coverage.
<u>See</u> Hoffman Decl., Exh. 3 at LMIC 000021.  The executed one,
however, was signed by Plaintiffs on July 16, 2005 and contains
an "x" next to the option rejecting stacked UM/UIM coverage,
along with handwritten information.  [<u>Id.</u>, Exh. 4 at LMIC
000022.]  Plaintiffs submit that the discrepancies between these
two versions of the Coverage Selection Form create a genuine
issue of material fact as to whether Liberty Mutual obtained a
legally sufficient rejection of UM/UIM stacked coverage.

Regarding the rejection of UIM coverage, Hawai`i law
provides, in pertinent part:

> If uninsured motorist coverage or underinsured
> motorist coverage is rejected, pursuant to section
> 431:10C-301(b):
>
> (1)  The offers required by section 431:10C-
> 301(d) are not required to be made;

> (2)  No further offers or notice of the
> availability of uninsured motorist
> coverage and underinsured motorist
> coverage are required to be made in
> connection with any renewal or
> replacement policy; and
>
> (3)  The written rejections required by
> section 431:10C-301(b) shall be
> presumptive evidence of the insured's
> decision to reject the options.

Haw. Rev. Stat. § 431:10C-301(e).  Furthermore, this district

court has stated:

> In Macabio, the insured plaintiffs brought
> suit against their automobile insurer arguing
> that, pursuant to Section 431:10C-301(d), their
> insurer "was required to obtain a written
> rejection of stacking coverage from them;
> otherwise, the stacking coverages must be implied
> as a matter of law." 87 Haw. at 311, 955 P.2d at
> 104.  The Hawai`i Supreme Court agreed.  The Court
> held that when the subsections in Section 431:10C-
> 301 pertaining to stacking were read together, it
> was clear that the insurer "was required to obtain
> a **written** rejection [of UIM and UM benefits] from
> the plaintiffs."  Id. at 317, 955 P.2d at 111
> (emphasis in original).  The Court further held
> that an insured's failure to return a written
> rejection to the insurer "was not a proper
> rejection of the option to stack"; thus, stacking
> of UIM and UM benefits "must be implied as a
> matter of law."  Id.

Windnagle v. State Farm Mut. Auto. Ins. Co., Civil No. 16-00218

JMS-KJM, 2016 WL 6275183, at *6 (D. Hawai`i Aug. 31, 2016)

(alteration in Windnagle), *report and recommendation adopted*,

2016 WL 5339347 (Sept. 22, 2016).

The section of the Coverage Selection Form titled

"STACKING/NON-STACKING OF COVERAGE" states: "If you have selected

either UNINSURED MOTORIST COVERAGE UNDERINSURED MOTORIST

COVERAGE, please elect the form of coverage you wish to apply by

checking the box below." [Okinaka Decl., Exh. 2 LMIC 000022

(emphasis omitted).]  On the Coverage Selection Form that

Plaintiffs signed on July 16, 2005, the box next to "I select the

stacked option for UM/UIM coverage" is blank, here is an "x" in

the box next to "I reject the stacked option for UM/UIM

coverage," and Plaintiffs signatures appear in the space next to

the two options.  [Id. (emphasis omitted).]  Plaintiffs admit

that they recognize their signatures in this section, however,

they each state that "the 'x' in the 'I reject the stacked option

for UM/UIM coverage' [box] does not appear to be my handwriting

and I do not have an independent recollection of ever refusing

the stacked option for UM/UIM coverage." [Pltfs.' CSOF, Aff. of

Michael Smith at ¶ 8; id., Aff. of Sandra Smith at ¶ 3.]

     This Court has stated that a party's "inability to

recall the events of the subject incident or choose one version

of events does not create a dispute of material fact to preclude

summary judgment." Doi v. Aoki, Civil No. 10-00639 LEK-RLP, 2012

WL 3100179, at *18 n.5 (D. Hawai`i July 27, 2012) (citing Ikei v.

City & Cnty. of Honolulu, 441 Fed. Appx. 493, 494-95 (9th Cir.

2011)).  Plaintiffs' lack of independent recollection, therefore,

is not enough to show that there is a genuine issue of material

fact.

Plaintiffs' affidavits denying that each of them marked the box rejecting the stacking option for UM/UIM coverage are the only evidence that they submit to show that there is a genuine issue of material fact as to whether Liberty Mutual obtained a legally sufficient rejection of stacked UIM coverage.  Plaintiffs essentially allege that someone else marked the box rejecting stacked coverage without their knowledge or consent.  However, Plaintiffs have not pointed to any evidence that would support this conclusion.  Thus, this Court can disregard these portions of their affidavits for purposes of the Motion.  See S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007) (brackets, citations, and internal quotation marks omitted).

Mr. Okinaka states that:

> I have examined LMIC 000022, the portion of the
> Coverage Selection Form in which [Plaintiffs]
> rejected stacking for their UM and UIM coverages.
> I am confident that I did not place the "x" in the
> box next to the option that reads: "I reject the
> stacked option for UM/UIM coverage."  Moreover,
> based on my experience as a Sales Representative
> in 2005, I have no reason to believe that anyone
> else at Liberty Mutual would have marked this box.

[Responsive Okinaka Decl. at ¶ 6.]  The amended declarations that Liberty Mutual sent to Plaintiffs to reflect the changes to the Policy – at least eleven since 2005 – along with the annual notices that Plaintiffs received, expressly state that the Policy coverage included non-stacked UIM coverage.  See Weyant-Day Decl., Exh. 11 at LMIC 000639, LMIC 000643, LMIC 000647, LMIC

26

000651, LMIC 000656, LMIC 000661, LMIC 000668, LMIC 000673, LMIC
000678, LMIC 000683, LMIC 000688, LMIC 000693, LMIC 000700, LMIC
000705, LMIC 000710, LMIC 000716, LMIC 000721, LMIC 000728, LMIC
000734, LMIC 000740, LMIC 000746, LMIC 000752.  In light of this
evidence, this Court does not adopt Plaintiffs' version of the
facts because their version is blatantly contradicted by the
record, and no reasonable jury could believe it.  See Scott, 550
U.S. at 380.

        This Court FINDS that there is no genuine issue of
material fact, and CONCLUDES that Liberty Mutual obtained a
legally sufficient rejection of stacked UIM coverage from
Plaintiffs.

**V.    New Offer of Stacking**

        Liberty Mutual argues that none of the changes
Plaintiffs made between its issuance and the February 4, 2011
accident required Liberty Mutual to make a new offer of stacking.
Plaintiffs, on the other hand, argue that the changes they made
were material, which required Liberty Mutual to make a new offer
of UM/UIM coverage, along with the stacked and non-stacked
options.

        Liberty Mutual renewed Plaintiffs' Policy for
successive policy periods from the August 2, 2005 to August 2,
2006 policy period through the August 2, 2010 to August 2, 2011

27

policy period.[11]  [Def.'s CSOF at ¶ 8 (citing Weyant-Day Decl.,
Exhs. 6-10); Pltfs.' CSOF at pg. 4 (admitting Def.'s ¶ 8).]  Over
this period, Liberty Mutual made the following changes to the
Policy at Plaintiffs' request:

1.    On August 18, 2005, Plaintiffs added a 2004 Mazda RX 8.
      [Def.'s CSOF at ¶ 9 (citing Weyant-Day Decl., Exh. 11 at
      LMIC 000641-42).]

2.    On March 5, 2007, Plaintiffs removed the 1997 Mercedes Benz
      C280.  [Id. at ¶ 10 (citing Weyant-Day Decl., Exh. 11 at
      LMIC 000649-50).]

3.    On May 1, 2007, Plaintiffs replaced the 2004 Mazda RX 8 with
      a 2006 Mazda RX 8.  [Id. at ¶ 11 (citing Weyant-Day Decl.,
      Exh. 11 at LMIC 000654-55).]

4.    On October 17, 2007, Plaintiffs replaced the 2006 Mazda RX 8
      with a 2007 Toyota 4Runner.  [Id. at ¶ 12 (citing Weyant-Day
      Decl., Exh. 11 at LMIC 000666-67).]

5.    On January 12, 2008, Plaintiffs replaced the 2007 Toyota
      4Runner with a 2007 Nissan 350Z.  [Id. at ¶ 13 (citing
      Weyant-Day Decl., Exh. 11 at LMIC 000671-72).]

6.    On January 31, 2008, Plaintiffs added a 2008 Cadillac CTS.
      [Id. at ¶ 14 (citing Weyant-Day Decl., Exh. 11 at LMIC
      000676-77).]

7.    On April 1, 2008, Plaintiffs removed the 2005 Jaguar X.
      [Id. at ¶ 15 (citing Weyant-Day Decl., Exh. 11 at LMIC
      000686-87).]

8.    On January 31, 2009, Plaintiffs added a 2008 Mazda Tribute;
      deleted personal injury protection ("PIP") for work loss,
      death benefits, and funeral expenses; and reduced the PIP
      liability limit for medical expenses to $10,000 per person

---

[11] Liberty Mutual's CSOF number 8 states "the August 2, 2010
through August 10, 2011 policy period."  However, this appears to
be typographic error.  See Weyand-Day Decl., Exh. 10 at LMIC
000599 (stating that the policy period was "08/02/10 to
08/02/11").

for each vehicle.  [Id. at ¶ 16 (citing Weyant-Day Decl., Exh. 11 at LMIC 000698-99).]

9.  On February 4, 2009, Plaintiffs removed the 2005 Jeep Grand Cherokee.  [Id. at ¶ 17 (citing Weyant-Day Decl., Exh. 11 at LMIC 000703-04).]

10.  On August 10, 2010, Plaintiffs removed the 2007 Nissan 350Z.  [Id. at ¶ 18 (citing Weyant-Day Decl., Exh. 11 at LMIC 000726).]

11.  On January 20, 2011, Plaintiffs added a 2008 BMW 328.  [Id. at ¶ 19 (citing Weyant-Day Decl., Exh. 11 at LMIC 000750).]

Plaintiffs do not contest these changes that they made to the Policy.  [Pltfs.' CSOF at pg. 4 (admitting Def.'s CSOF ¶¶ 9-19).]

Haw. Rev. Stat. § 431:10C-301(d) provides, in pertinent part: "Once an insured has been provided the opportunity to purchase or reject the coverages in writing under the options, no further offer is required to be included with any renewal or replacement policy issued to the insured."

Allstate Insurance Co. v. Kaneshiro, 93 Hawai`i 210, 998 P.2d 490 (2000), is the "seminal Hawaii case relating to required offers of UM/UIM coverage."  Lee v. Gov't Emps. Ins. Co., 911 F. Supp. 2d 947, 968 (D. Hawai`i 2012), *reconsideration granted in part*, Civil No. 11-00782 LEK-BMK, 2013 WL 690609 (D. Hawai`i Feb. 25, 2013), and *aff'd*, 620 F. App'x 610 (9th Cir. 2015).  Specifically, "Kaneshiro provides this Court with guidance on the inquiry into whether changes in a no-fault motor vehicle policy are 'material.'"  Ford, 2016 WL 6275181, at *6.

In Kaneshiro, Clyde Kaneshiro ("Clyde") purchased a motor vehicle insurance policy ("Allstate

Policy") from the defendant, Allstate Insurance Co. ("Allstate"), on September 1, 1974. Four years later, Clyde added Ann Kaneshiro ("Ann") as his spouse and an insured driver to the Allstate Policy. In December 1990, and again on March 1, 1993, Allstate offered Clyde UM/UIM coverage, and Clyde rejected both offers in writing. <u>Kaneshiro</u>, 93 Hawai`i at 213, 998 P.2d at 493.

On March 3, 1994, Clyde requested several changes to the Allstate Policy. . . . Clyde informed his Allstate agent that, because he and Ann were getting a divorce, he wanted to take his name off of the Allstate Policy. Clyde subsequently signed a release, which deleted himself as a named insured, and made Ann the sole named insured under the Allstate Policy. While these changes were being implemented, "Allstate did not offer UM/UIM coverage to Clyde or Ann, and Ann did not request or pay for such coverage." <u>Id.</u>

On September 1, 1994, when Ann renewed the Allstate Policy, she also added another vehicle. On September 10, 199[4], Ann sustained injuries in an automobile accident. Allstate paid her no-fault benefits, but denied her claim for UM/UIM benefits. <u>Id.</u> "Allstate filed suit in the federal district court, seeking a declaration that [Ann]'s policy did not include UM/UIM coverage on the date of the accident because Clyde's 1993 written rejection was legally sufficient and binding on [Ann]." <u>Id.</u> The federal district court then certified the following question to the Hawaii Supreme Court:

> Where a named insured whose spouse is listed as a covered driver under an automobile insurance policy rejects [UM and UIM] coverage in writing in connection with the first renewal of the subject insurance policy after January 1, 1993 and thereafter asks the insurer's agent to remove his name from the policy and to substitute his spouse as the named insured under the policy, and an additional vehicle is added to the policy, is the insurer required to offer [UM and UIM]

> coverage to the new named insured pursuant to
> [HRS] § 431:10C-301?

> Id. at 212-213, 998 P.2d at 492-93 (alterations in
> original). . . .

Lee, 911 F. Supp. 2d at 968 (some alterations in Lee).

The Hawai`i Supreme Court answered the certified question in the affirmative. Kaneshiro, 93 Hawai`i at 213, 998 P.2d at 493. The supreme court interpreted § 431:10C-301(d) to mean that, "when a material change is made to an existing policy, the resulting policy is not a 'renewal or replacement policy' and a new offer of optional UM/UIM coverage is required." Id. at 217, 998 P.2d at 497. It ultimately held that:

> [B]ased on the totality of the circumstances
> present in this case and the public policy
> underlying Hawaii's Motor Vehicle Insurance Code,
> we hold that the changes to the policy made in
> March 1994 – removing Clyde as the named insured,
> substituting [Ann] as the sole named insured after
> Allstate had notice that [Ann] was no longer
> Clyde's resident spouse due to their pending
> divorce, and adding a vehicle under the policy –
> taken together, constituted a material change to
> the pre-existing policy. The policy issued to
> [Ann] in March 1994 was not merely a renewal or
> replacement of the policy issued to Clyde, and,
> therefore, Allstate was required to make a new
> offer of UM/UIM coverage to [Ann].

Kaneshiro, 93 Hawai`i at 220-21, 998 P.2d at 500-01. In applying Kaneshiro, this Court has stated:

> The Kaneshiro court mentions in its analysis the
> fact that vehicles were added to the Allstate
> Policy, but this appears to be only in addition to
> the primary fact that the named insured changed.
> Id. at 220, 998 P.2d at 500. When Ann replaced
> Clyde as the sole named insured under the Allstate

31

> Policy, Allstate, in effect, obtained a new
> client. . . .
>
>      Under Kaneshiro, therefore, the mere addition
> of a driver, as opposed to the replacement of a
> named insured, does not constitute a material
> change to an automobile insurance policy. . . .
> Without more, the addition of vehicles and the
> addition of [a driver] to [a policy] were not the
> type of "material changes" that the Kaneshiro
> court required. . . .

Lee, 911 F. Supp. 2d at 969.

     The changes made to the Policy here were not material,

and Liberty Mutual was not required to make a further offer of

UM/UIM coverage.  The changes that Plaintiffs made involved

substituting one vehicle for another and once making changes to

the personal injury protection coverage under the Policy.  Unlike

in Kaneshiro, Plaintiffs did not change or substitute the named

insureds on the Policy or change from a single-vehicle to a

multi-vehicle policy.  Likewise, in contrast to Kaneshiro where

the insured's ex-husband rejected the optional UIM coverage, and

the insureds got divorced, Plaintiffs were the ones who rejected

the optional UIM coverage and did not change their marital

relationship.  Lastly, unlike in Lee, Plaintiffs did not ever add

a driver to the Policy.

     This Court FINDS that the changes Plaintiffs made to

the Policy were not material, and CONCLUDES that Liberty Mutual

was not required to make a new offer of UM/UIM coverage.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment, filed November 21, 2016, is HEREBY GRANTED, and Plaintiffs' Counter-Motion for Summary Judgment, filed February 24, 2017, is HEREBY DENIED.  There being no remaining claims in this case, this Court DIRECTS the Clerk's Office to close this case on **June 21, 2017**, unless Plaintiffs file a motion for reconsideration of this Order by **June 19, 2017**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2017.



  /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

MICHAEL SMITH AND SANDRA SMITH VS. LIBERTY MUTUAL FIRE INSURANCE COMPANY; CIVIL 15-00128 LEK-KJM; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' COUNTER-MOTION FOR SUMMARY JUDGMENT